IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHARLES KEITH DAVIDSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, Commissioner )<br>of Social Security, )<br>)<br>Defendant. ) | CIVIL ACTION NO. 2:03CV1272-SRW<br>(WO) |

**MEMORANDUM OF OPINION**

Charles Keith Davidson brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and Supplemental Security Income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On July 23, 2001, plaintiff filed an application for disability insurance benefits and Supplemental Security Income, alleging that he became disabled on July 16, 2001 due to diabetes, alcoholism, and problems with his lower back, shoulder, elbow and wrist. (R. 143). On April 17, 2003, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on May 20, 2003, in

which he found, *inter alia*, that: (1) plaintiff has severe impairments of tendonitis, diabetes mellitus, diabetic neuropathy, fibromyalgia, degenerative joint disease, osteoarthritis, and hypertension, and that he is status-post reverse Bennett's fracture with a volarly distally displaced fracture; (2) plaintiff has a non-severe impairment of situational anxiety/depression; (3) plaintiff retains the residual functional capacity to perform a limited range of medium work; (4) plaintiff can perform his past relevant work as a telemarketer; and (5) there are a significant number of jobs in the regional or national economies which plaintiff could perform. On December 5, 2003, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985

F.2d at 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The only issue specifically raised by plaintiff is whether that the ALJ erred by failing to give controlling or great weight to the opinion of plaintiff's treating physician, Sister Roseanne Cook.  Plaintiff began receiving treatment at the Pine Apple Center in February 2002.  Between February and October 2002 plaintiff was treated at the center on nine occasions, presenting with subjective complaints primarily of pain in his shoulder, lower back, foot, legs, neck, hands, elbows, knee, and heel. (Exhibit 10F, R. 279-88). Plaintiff was evaluated by various medical personnel, who rendered assessments of: diabetes mellitus (Type I), degenerative joint disease (shoulders), and diabetic neuropathy (CRNP Kelly, 2/25/02); diabetes mellitus (Type I), degenerative joint disease, leg cramps, "? Osteoporosis," and anxiety/depression (CRNP Kelly, 3/25/02); sinusitis and diabetes mellitus (Type I)(Dr. Cook, 5/16/02); diabetes mellitus (Type I)(Chan, 6/14/02); diabetes mellitus (Type I), degenerative joint disease (shoulders-elbows), diabetic neuropathy, and sinusitis (CRNP Kelly, 7/10/02); diabetes mellitus (Type I) and musculoskeletal pain (Dr. Cook, 8/5/02); diabetes mellitus (Type I) and degenerative joint disease (all joints)(CRNP Kelly, 9/9/02); fibromyalgia (Farister, 10/11/02); uncontrolled diabetes mellitus (Type I) and degenerative joint disease (all joints)(CRNP Kelly, 10/29/02).

On November 5, 2002, Dr. Cook completed a physical capacities evaluation form

which would, if accepted, establish disability. As plaintiff argues:

> The form shows Dr. Cook's opinions about what Mr. Davidson is able to do despite his impairments and limitations: lift and carry up to 10 pounds occasionally; sit one hour at a time; stand and walk four hours at a time; in an eight-hour work day, sustain sitting, standing and walking for a total of four hours; needs four hours of rest in an eight-hour work day. Regarding the use of his arms and hands, Dr. Cook opined that Mr. Davidson is able to use his hands for simple grasping frequently and fine manipulation occasionally. She opined that he is able to occasionally reach, push and pull with his arms. Dr. Cook opined that Mr. Davidson is able to occasionally stoop, crouch, kneel, crawl, never able to climb and frequently able to balance. She indicated that Mr. Davidson is never able to work around unprotected heights or be exposed to marked changes in the environment. He is occasionally able to be around moving machinery, drive auto equipment, be exposed to dust, fumes, or gases.
>
> On the form, Dr. Cook indicated that Mr. Davidson's impairments cause pain. She indicated that his pain is severe and occurs frequently. Dr. Cook indicated that if Mr. Davidson were placed in a work environment, he would be absent more than three times in a month. Dr. Cook opined that Mr. Davidson is severely limited in his ability to deal with work stress and his impairments frequently interfere with his ability to concentrate and pay attention.

(Plaintiff's brief, pp. 8-9)(citing R. 291-93).

> The opinion of a treating physician . . . "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). [The Eleventh Circuit] has concluded "good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. Id. When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons. Id.

Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In this case, the ALJ provided a detailed summary of plaintiff's medical treatment history and the PCE form completed by Dr. Cook. (R. 47-48). The ALJ correctly stated the law of this circuit regarding the weight to be accorded the opinion of a treating physician and the permissible bases for rejecting such

4

an opinion. (R. 51). The ALJ then rejected the opinion expressed by Dr. Cook in the PCE form, noting that it: (1) "is so brief and conclusory that it lacks persuasive weight;" (2) "is unsubstantiated by any clinical or laboratory findings;" (3) "is not accompanied by objective medical evidence;" and (4) "is grossly inconsistent with the assessments of Dr Golomb and Dr Soler," consultative examiners who both "submitted detailed narrative reports of their findings on examination." The ALJ further noted that "while Dr. Cook is the claimant's treating physician, it appears that [plaintiff] has frequently been seen at Rural Health Medical Program Pine Apple Health Center by a CRNP and Dr. Cook has merely countersigned the CRNP's reports," and that "Dr. Golomb provided interpretation of x-rays of the claimant's lumbosacral spine, both knees, both shoulders, and right hand," all of which were "essentially normal." (R. 51-52).

Plaintiff apparently interprets the ALJ's statement regarding Dr. Cook's countersigning a CRNP's report as a finding that Dr. Cook is not plaintiff's treating physician. (Plaintiff's brief, p. 7). However, the ALJ clearly determined that Dr. Cook is a treating physician. (R. 51). The court understands the ALJ's statement regarding countersigning to be an accurate observation by the ALJ that – on several of plaintiff's visits to the clinic – he was not personally evaluated by Dr. Cook, but by a nurse practitioner. According to the treatment records, at the time Dr. Cook completed the PCE form in November 2002, she had personally evaluated plaintiff only twice – on May 16, 2002 (R.

5

286)[1] and on August 5, 2002 (R. 283).[2]  (See Exhibit 10-F).  Plaintiff argues, "Dr. Cook signed each medical record in the claimant's file which demonstrates that she read the document and had knowledge of Mr. Davidson's impairments and treatment." (Plaintiff's brief, p. 7).  While this is presumably correct, the ALJ's observation that Dr. Cook did not personally evaluate plaintiff on each occasion is also valid and supported by the record.

Plaintiff's records of treatment from Pine Apple Center prior to the PCE reflect diagnoses by CRNP Kelly (and countersigned by Dr. Cook) of degenerative joint disease in plaintiff's shoulders, elbows, and "all joints." (R. 279, 282, 284, 287, 288).  These diagnoses, however, are unaccompanied by any objective reports.  (See Exhibit 10-F).  As the ALJ notes, Dr. Golomb reviewed X-rays of plaintiff's knee joints, both shoulders, lumbosacral spine, and right hand, and determined that all were essentially normal.  He specifically noted no degenerative changes in the shoulders.  (R. 296-97).

The ALJ observes that Dr. Cook's opinion, as reflected in the PCE, is "so brief and conclusory that it lacks persuasive weight."  (R. 51).  Dr. Cook provides no explanation of the reasons for her assessment of plaintiff's physical limitations as expressed in the PCE. She does not give the reasons for her conclusions, nor does she indicate which of plaintiff's

---

[1] Dr. Cook signed the treatment record for May 16, 2002, but the notations in the record on that date appear to have been written by someone else. (Compare R. 283 with R. 286).  For purposes of this analysis, the court assumes Dr. Cook performed evaluations on both of these dates.

[2] Dr. Cook evaluated plaintiff on a third occasion over three months after she completed the PCE form.  (R. 303).

impairments cause the limitations. To the extent the limitations are based on the multiple diagnoses of degenerative joint disease, they are refuted – as the ALJ notes – by the X-rays reviewed by Dr. Golomb. It is not apparent whether Dr. Cook believes plaintiff's limitations as listed in the PCE form to be caused by fibromyalgia. She does not so indicate in the PCE form or elsewhere in her treatment notes. The first time Dr. Cook personally evaluated the plaintiff prior to completing the PCE, she diagnosed diabetes and sinusitis; the second time she evaluated him, she diagnosed diabetes and "musculoskeletal pain." (R. 283, 286). Although she annotated the PCE form to reflect that plaintiff's level of pain is frequent and severe (R. 293), when Dr. Cook diagnosed the "musculoskeletal pain," she prescribed only Ibuprofen and extra-strength Tylenol. (R. 283).[3] The ALJ's determination that Dr. Cook's opinion as reflected in the PCE is "so brief and conclusory that it lacks persuasive weight"

---

[3] Plaintiff cites Stewart v. Apfel, 245 F.3d 793 (11th Cir. 2000)(Table), 2000 U.S. App. LEXIS 33214 (11th Cir. Dec. 20, 2000)(unpublished disposition) for the proposition that "a 'treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of severity and the physician must interpret the data for the reader.'" (Plaintiff's brief, p. 10). However, as noted above, Dr. Cook does not expressly state that plaintiff is disabled due to fibromyalgia. As noted by the Commissioner, on the single occasion when Dr. Cook herself rendered a diagnosis of fibromyalgia – over three months after she signed the PCE – she preceded the diagnosis with a question mark. (R. 303). On the one instance prior to the PCE when the examiner diagnosed fibromyalgia, he noted "physical exam noncontrib[u]tory." (R. 281). As the Commissioner argues, there is no indication in plaintiff's treatment record regarding the presence of at least 11 out of the 18 "trigger points" used to diagnose fibromyalgia (see Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)(cited in Stewart)). In Stewart, in contrast to the present case, the plaintiff's treating rheumatologist had provided "an extensive report" which "outlined the signs and symptoms supporting his diagnosis of fibromyalgia and disability," and the ALJ failed to provide "any explanation for his rejection of the treating physician's opinion and diagnosis." 2000 U.S. App. LEXIS 33214 at * 6.

is supported by substantial evidence.

The ALJ noted that Dr. Golomb, who performed a consultative examination on January 17, 2003, is a Diplomate of the American Board of Disability Consultants. (R. 52, Exhibit 12-F). The ALJ cited plaintiff's report to Dr. Golomb that, when questioned about his hobbies, plaintiff responded that "he is a 'wood burner' – that he makes various sticks (canes), plaques, and decorative furniture, and he likes to work around his home." (R. 48, 295). The ALJ further noted, *inter alia*, Dr. Golomb's detailed observations that plaintiff "'sat comfortably in the chair for at least 45 minutes,' 'did not appear to be in any distress whatsoever,' and 'did not change position at all in that period of time,' that he 'arose from sitting with great ease,' 'was very muscular with prominent veins seen in his upper limbs,' 'was quite agile, moved about with fluid movements,' had a 'full range of motion of his head and neck, his shoulder joints, pelvic joints, and all other peripheral joints," that he 'walked with a normal, springy, vigorous gait,' could 'walk on his heels and toes, squat fully, and arise with great ease,' is 'very strong,' and 'the strength of his major muscle groups, including those of the shoulder and pelvic girdles, those of the proximal and distal portions of his upper and lower limbs, his hand grip strength and finger dexterity, were all rated as 5 out of 5.'" (R. 49, 295-96). The ALJ further noted that plaintiff reported to Dr. Golomb that he drives a car and stated, "I have a '68 Chevy pickup in the yard which I'm working on now." (R. 49, 296). The ALJ also cited the detailed report of examination rendered by Dr. Soler after a consultative examination conducted on March 1, 2002. (R. 45-46, 230-35). As the ALJ notes, Dr. Cook's PCE is both conclusory and "grossly inconsistent" with the

physical capacity assessments of both of the consultative examiners, who provided detailed reasons for their assessments.  Under these circumstances, the ALJ did not err by failing to give great or controlling weight to Dr. Cook's opinion as expressed in the physical capacities evaluation form.  The ALJ clearly articulated his reasons for rejecting Dr. Cook's opinion, and those reasons are supported by substantial evidence.

## CONCLUSION

Upon consideration of the record as a whole, the court concludes that the decision of the ALJ is supported by substantial evidence and is due to be affirmed.

Done, this 4th day of April, 2006.

/s/ Susan Russ Walker  
SUSAN RUSS WALKER  
UNITED STATES MAGISTRATE JUDGE